UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TAMIKO CARRILLO,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>NATIONWIDE MUTUAL FIRE<br>INSURANCE COMPANY, et al.,<br><br>　　　　　Defendants. | Case No.: C 07-1979 JF (PVT)<br><br>**ORDER RE DEFENDANTS' MOTION TO COMPEL AND PLAINTIFF'S MOTION TO QUASH** |

On April 15, 2008, the parties appeared before Magistrate Judge Patricia V. Trumbull for hearing on: 1) a motion filed by Plaintiff Tamiko Carrillo ("Carrillo")[1] to quash subpoenas; and 2) a motion filed by Defendant Nationwide Mutual Fire Insurance Company ("Nationwide") to compel production of documents.[2]  Both motions focus solely on the issue of whether Nationwide is entitled to conduct discovery into certain subject matters.

**I.　BACKGROUND**

This is an insurance coverage and bad faith case in which the insured's judgment creditor and

---

[1]　There is some confusion in the record regarding the spelling of Plaintiff's name.  In some documents it is spelled "Carillo" while in other documents it is spelled "Carrillo."  The court is using the latter spelling, because that is the spelling used by Plaintiff's counsel in the briefing for these two motions.

[2]　The holding of this court is limited to the facts and the particular circumstances underlying the present motion.

ORDER, *page 1*

assignee is suing the insurance company for breach of contract, recovery of judgment under California Insurance Code section 11580, and breach of the implied covenant of good faith and fair dealing.

The Underlying Action[3] arose from the psychotherapist/patient relationship of Carrillo and her therapists, Catherine Casey and Kristen Mansheim.[4] In the Underlying Action, Carrillo alleged that Casey and Mansheim committed negligence and malpractice by crossing boundaries, over-medicating Carrillo, failing to maintain the therapeutic container, and ultimately by abusing the transference phenomenon when Mansheim began a personal and sexual relationship with Carrillo while still acting as her therapist. Carrillo's complaint included, *inter alia*, causes of action against both Mansheim and Casey for malpractice, general negligence and premises liability, and causes of action against Mansheim (but not Casey) for intentional infliction of emotional distress, sexual harassment, sexual battery and battery.

At issue in the present motions is the extent to which Nationwide may conduct discovery into the merits of the Underlying Action, including discovery of Carrillo's medical, psychological and other mental health information, as well as into Carrillo's relationships with Casey and Mansheim.

**II.   DISCUSSION**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . ." FED.R.CIV.PRO. 26(b)(1). The scope of discovery is not limited by concepts of admissibility. "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Ibid*.

Nationwide has asserted, among others, the following affirmative defense:

> "Nationwide Fire is informed and, on that basis believes, that Ms. Casey assigned her rights to Plaintiff in the Underlying Action in exchange for a covenant to limit execution against Ms. Casey's assets. Nationwide Fire is further informed that the Underlying Judgment resulted from uncontested proceedings lasting about 25

---

[3] As used herein, the "Underlying Action" refers to *L. Doe vs. Kristen Mansheim, individually and dba Principle Psychology and Mansheim & Casey; Catherine Casey, individually and dba Principle Psychology and Mansheim & Casey; and Does 1-25*, Superior Court of the State of California in and for the County of Santa Clara, Civil Action No. 1-03-CV-817594.

[4] See "Plaintiff's Trial Brief" in the Underlying Action, attached as Exhibit C to the Declaration of Anna A. Chopova, filed herein on March 4, 2008 (Docket No. 46) ("Chopova Declaration"), at 1:23-26.

minutes in which no evidence was presented on Ms. Casey's behalf. On this basis, Nationwide Fire contends that the Underlying Judgment may not be a true or accurate reflection of damages suffered by Plaintiff and caused by Ms. Casey. Nationwide Fire is informed and believes, and on that basis contends, that the Underlying Judgment is unreasonable and may be the product of fraud or collusion on the part of Plaintiff and Ms. Casey."

Here, most[5] of the information Nationwide seeks is relevant to this defense. For example, if Carrillo actually suffered no injuries as a result of either Mansheim's or Casey's alleged actions (as opposed to other causes), that fact would tend to make the existence of fraud or collusion more probable than it would be otherwise. *See* FED.R.EVID. 401 (evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence").

Carrillo cites no legal authority that supports her contention that, despite the relevance of the information sought to Nationwide's affirmative defense, discovery is somehow barred by Nationwide's denial of the tender of defense in the Underlying Action. Instead, Carrillo argues that Nationwide will not be able to use the information in this case because it is purportedly bound by the judgment in the Underlying Action. However, it has not yet been determined whether or not Nationwide will be bound by the judgment in the Underlying Action.

In *Hogan v. Midland National Ins. Co.,* 3 Cal.3d 553 (1970) the California Supreme Court explained:

> "An insurer that has been notified of an action and refuses to defend on the ground that the alleged claim is not within the policy coverage is bound by a judgment in the action, *in the absence of fraud or collusion*, as to all material findings of fact of liability of the insured. The insurer is not bound, however, as to issues not necessarily adjudicated in the prior action and can still present any defenses not inconsistent with the judgment against the insured." *Id.* at 564-65 (*emphasis added*), quoting *Geddes & Smith, Inc. v. St. Paul Mercury Indemnity Co.*, 51 Cal.2d 558, 561-62 (1959).

Similarly, the court in *Pryun v. Agricultural Ins. Co.*, 36 Cal.App.4th 500 (1995) expressly noted that:

> "Courts have for some time accepted the principle that an insured who is abandoned by its liability insurer is free to make the best settlement possible with the third party complainant, including a stipulated judgment with a covenant not to execute. Provided that such settlement *is not unreasonable and is free from fraud or*

---

[5] Medical information that is *unrelated* to the conditions Carrillo put at issue in the Underlying Action is not relevant to this action, and thus is not subject to discovery.

ORDER, *page 3*

*collusion*, the insurer will be bound thereby." *Id*. at 515 (emphasis added and citations omitted).

Under *Hogan* and *Pryun*, Nationwide is not bound by the judgment if the judgment was obtained through "fraud or collusion." Nationwide is thus entitled to conduct discovery related to its defense that the judgment was obtained through fraud or collusion. In the context of the present discovery motions, it would be inappropriate to make any determination regarding whether or not Nationwide will ultimately be able to prove that defense. So long as the defense remains at issue in this case,[6] Nationwide is entitled to conduct discovery related to it.

None of the appellate cases relied on by Carrillo involved situations where the insurer timely[7] asserted a defense based on fraud or collusion. In *Amato v. Mercury Casualty Co.*, 53 Cal.App.4th 825 (1997) the insurer did attempt to assert a defense based on collusion, but was found to have waived the defense because it had not asserted it at either the first trial or first appeal of the coverage action. *See id*. at 839.

Carrillo contends that the fact there was an actual trial in this case, albeit uncontested, assures that the judgment was reasonable and free of fraud or collusion. However, the facts and circumstances of the underlying trial are merely evidence relevant to those issues. They do not create an absolute bar that precludes an insurer from litigating issues of reasonableness, fraud and collusion. *See, e.g., Pryun* at 517 n. 16 ("We exclude, of course, those trial proceedings which are clearly a patent sham collusively designed to create a judgment for which liability insurance coverage would then exist."). Those issues will be decided either at trial or in a dispositive motion. At this stage of the litigation, Nationwide is entitled to take discovery relevant to its defense.

While there may be cases where it is appropriate to limit or preclude an insurer's discovery

---

[6] Carrillo contends that Nationwide has not adequately pled its fraud defense. However, Carrillo has not moved to strike the defense.

[7] Carrillo's contention that it is too late for Nationwide to raise any issues of fraud or collusion is misplaced. The case relied on by Carrillo, *Zander v. Casualty Insurance Co. of California*, 259 Cal.App.2d 793, 805-06 (1968), expressly stated that if the insurer in that case "had offered proof that it had discovered fraud which it had not had a fair opportunity to present until judgment in the original action had become final, it could raise the defense in this action." Whether or not Nationwide can make such a showing is not subject to a determination in the context of the present discovery motions.

into the merits of an underlying action, this is not one of them. This is not a situation where there was substantial judicial involvement at the trial stage; here the trial was uncontested, took just 25 minutes and the trial judge did not draft the Judgment After Trial. And while Casey's assignment of her rights against Nationwide in exchange for a covenant not to execute from Carrillo is not by itself sufficient to show fraud or collusion, other facts at least arguably raise such concerns.

The Underlying Action was filed June 3, 2003. Mansheim filed for bankruptcy in 2004. (*See* Chopova Declaration, Exh. B showing a 2004 case number for Mansheim's bankruptcy file.) The Bankruptcy Court issued a Discharge of Debtor and Final Decree in Mansheim's bankruptcy on April 26, 2004. It appears from the court file in Mansheim's bankruptcy case that Carrillo never filed a claim in Mansheim's bankruptcy for her *non-dischargeable* claim of intentional infliction of emotional distress against Mansheim. *See, e.g., In re Elder*, 262 B.R. 799, 806 (C.D.Cal. 2001) (discussing non-dischargeability of intentional infliction of emotional distress claim).

Despite the fact that her complaint in the Underlying Action asserts the claim for intentional infliction of emotional distress only against Mansheim–not Casey, and despite having failed to file a corresponding claim in Mansheim's bankruptcy, Carrillo included a claim for intentional infliction of emotional distress *against Casey* in Plaintiff's Trial Brief in the Underlying Action. (*See* Chopova Declaration, Exh. F.) In that Trial Brief, Carrillo argued to the trial judge that Casey's (and Mansheim's)[8] behavior had been "intentional, malicious and despicable and done for the purpose of causing [Carrillo] to suffer humiliation, mental anguish and severe emotional distress." (*Id*.) Yet in the Judgment After Trial, drafted by Carrillo's counsel and "approved as to form" by Casey's counsel, there is no mention of the intentional tort (which would likely have been an excluded claim under Nationwide's policy). (*See* Chopova Declaration, Exh. G.) The Judgment After Trial that was drafted by Carrillo's counsel, and approved by Casey's counsel, also expressly refers to the fact that some of the negligence occurred in Casey's home–a fact that is relevant only to the premises liability

---

[8] In her Trial Brief, Carrillo represented to the trial judge that her claims against Mansheim were discharged in Mansheim's bankruptcy, and that she therefore was unable to seek "further" remedies against Mansheim personally. There is no indication in the record before this court that Carrillo ever informed the trial court that her claim for intentional infliction of emotional distress against Mansheim was not dischargeable in bankruptcy, or of the fact she had neither filed a claim in Mansheim's bankruptcy nor sought any determination that her claims were non-dischargeable.

ORDER, *page 5*

claim which is *not* expressly mentioned in that judgment.[9] (*Id.*)  Under these circumstances, there is ample reason to allow Nationwide to conduct discovery relevant to its affirmative defense of fraud and/or collusion.[10]

Carrillo's objection to the discovery based on her right to privacy is overruled to the extent the information sought is relevant to the medical, mental and psychological conditions Carrillo put at issue in the Underlying Action.  Carrillo waived her right to privacy for purposes of pursuing her claims against Casey and Mansheim.  *See* CAL.EVID.CODE, §§ 996 & 1016; *see also, Britt v. Superior Court*, 20 Cal.3d 844, 864 (1978) (a patient-litigant "may not withhold information which relates to any physical or mental condition which they have put in issue by bringing [a] lawsuit.") That waiver extends to the current litigation so long as her medical, mental and psychological conditions remain relevant to the claims and defenses in this litigation.  However, the waiver is limited to information about conditions Carrillo put at issue in the Underlying Action, including information about other possible causes.  *See Britt*, 20 Cal.3d 864 n. 9.

### III. CONCLUSION

Information about the merits of the Underlying Action, and about Carrillo's relationships with Casey and Mansheim, is relevant to Nationwide's defense of unreasonableness, fraud and/or collusion.  Thus Nationwide is entitled to discovery regarding those subjects, including information about those medical, mental and psychological conditions that Carrillo has put at issue.  Therefore, based on the briefs and arguments presented,

IT IS HEREBY ORDERED that, for the reasons discussed herein, Nationwide is entitled to conduct discovery regarding Carrillo's relevant medical and mental health information, Carrillo's

---

[9] While the Trial Brief has a section entitled "Premises Liability," it does not delineate the elements for that tort.  Thus it is not at all clear that the trial judge intended to enter a judgment against Casey on the Premises Liability claim.  Although an insurer who has wrongfully denied a tender of defense cannot re-litigate the merits of an underlying action in order to determine which claims were properly part of an ambiguous judgment, that does not necessarily mean an insurer may not, in support of a fraud defense, attempt to show that the injured party intentionally drafted a judgment against the insured in such a way as to arguably include a claim that the trial court had no intention of including in the judgment.

[10] The court expresses no opinion regarding the ultimate merits of Nationwide's defense of fraud and/or collusion.  It finds only that discovery is warranted in light of facts that raise sufficient concerns as to whether Carrillo improperly manipulated the trial proceedings.

1  damages as alleged in the Underlying Action, the bases for the causes of action against Nationwide's

2  insured (Catherine Casey) in the Underlying Action, and Carrillo's professional and personal

3  relationships with the defendants in the Underlying Action (Kristen Mansheim and Catherine Casey).

4      IT IS FURTHER ORDERED that, no later than June 6, 2008, the parties shall meet and

5  confer regarding the other specific objections raised in Carrillo's responses to Nationwide's

6  discovery requests, and regarding a date for production of responsive documents.  The meet and

7  confer shall also cover an appropriate narrowing scope for those discovery requests and non-party

8  subpoenas that call for disclosure of Carrillo's medical, psychological and/or other mental health

9  information.  If, after meeting and conferring, any disputes remain regarding the discovery requests

10  at issue, Nationwide may file a further motion to compel on four week's notice.  Carrillo's

11  opposition will be due two weeks before the hearing date, and Nationwide's reply will be due one

12  week before the hearing date.

13      IT IS FURTHER ORDERED that Carrillo's motion to quash is DENIED as to the medical,

14  psychological and/or other mental health records regarding the medical, mental and psychological

15  conditions Carrillo put at issue in the Underlying Action.  The motion is GRANTED as to any

16  records unrelated to those conditions.  In the event the parties are unable to reach agreement

17  regarding the narrowing scope for any of the subpoenas at issue in this motion, Carrillo may file a

18  further motion for protection as to any such subpoena on four week's notice.  Nationwide's

19  opposition will be due two weeks before the hearing date, and Carrillo's reply will be due one week

20  before the hearing date.

21      IT IS FURTHER ORDERED that within 5 court days after either the parties reach an

22  agreement on the scope of the non-party subpoenas or the court issues an order delineating that scope

23  if Carrillo files a further motion for protection, Nationwide's counsel shall meet and confer with both

24  Carrillo's counsel and the subpoenaed non-parties regarding a reasonable date for production of

25  documents sought by the subpoenas, as they have been narrowed by either the parties' agreement or

26  the further order of this court.

27  Dated: *5/22/08*

28                           PATRICIA V. TRUMBULL
                         United States Magistrate Judge